Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 97 C 8745 | DATE | JAN 25 2001 |
| CASE TITLE | Vitullo, et. al. v. Velocity Powerboats, et. al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Judgment is hereby entered in favor of the plaintiff in the amount of $850,895.71 against defendants Velocity Powerboats, Inc., a corporation, and Thoroughbred Powerboats, Inc., a corporation. There are no further actions before this court, therefore this case is hereby closed. Any pending motions are considered moot and terminated. Enter Memorandum Opinion and Order.
(11) ☐ [For further detail see order on reverse side of the original minute order.]

No notices required, advised in open court.
No notices required.                                             number of notices
Notices mailed by judge's staff.
Notified counsel by telephone.                                   JAN 26 2001
                                                                 date docketed
X   Docketing to mail notices.
X   Mail AO 450 form.                                            docketing deputy initials
    Copy to judge/magistrate judge.
                                                                 date mailed notice
vg(lc)    courtroom
          deputy's
          initials
                      Date/time received in
                      central Clerk's Office                     mailing deputy initials

Document Number 97

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

Jami R. Vitullo, Special Administrator of the )
Estate of Anthony L. Vitullo, Deceased, and )
Jami R. Vitullo, Individually, )
)
      Plaintiff, )
) No. 97 C 8745
v. )
) HONORABLE DAVID H. COAR
Velocity Powerboats, Inc., a corporation, )
Thoroughbread Powerboats, Inc., a )
corporation )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

DOCKETED
JAN 26 2001

Before this court is plaintiff, Jami R. Vitullo ("J.Vitullo"), special administrator of the Estate of Anthony L. Vitullo ("A.Vitullo"), deceased and J.Vitullo, individually motion for order of judgment.

## FACTS

1. On July 27, 1997, ANTHONY and JAMI were traveling in a 26' Velocity powerboat, VIN number VMX26674D797, on Lake Michigan in the City of Chicago, State of Illinois.

2. On and before July 27, 1997, the Defendants, VELOCITY POWERBOATS, NC., a corporation and THOROUGHBRED POWERBOATS, NC., and each of them, manufactured and assembled the aforesaid powerboat.

3. On July 27, 1997, the Velocity powerboat in which plaintiff and plaintiffs decedent were riding, broke apart.

4. As a direct and proximate result of the above occurrence, A.Vitullo sustained serious physical injuries that resulted in his death on July 27, 1997.

97

5. In addition, as a direct and proximate result of the above occurrence, J.Vitullo sustained injuries of a personal and pecuniary nature, including the loss of A.Vitullo's society, support, companionship, consortium, guidance and affection.

6. Moreover, as a direct and proximate result of the above occurrence, JAMI sustained the following injuries:
   a. multiple lacerations and abrasions on thighs, abdomen, and buttocks.
   b. a bulging disc in her back.
   c. fracture and bone chip in right hip.
   d. J.Vitullo has other injuries which are contained in the court record and marked as Group Exhibit "A," in the Vitullo Affidavit.

7. As a direct and proximate result of the above injuries, J.Vitullo continues to suffer disabling, painful and disfiguring injuries as a result of this incident. While everyday and several aspects of her life have been impacted, a sampling of things that impact J.Vitullo are as follows:
   a. inability to write for extended periods of time without substantial pain in her right arm;
   b. recurring muscle spasms and sharp stabbing pains related to the bulging disc in her back;
   c. a constant dull ache related to the bulging disc in her back;
   d. reduced range of motion related to fracture and bone chip in right hip;
   e. embarrassing sounds of popping and cracking during activities involving movement of right hip;
   f. constant dull ache related to right hip injury and sharp pains after almost any kind of physical activity;
   g. inability to remain seated for extended periods of time without significant pain in right hip; and
   h. decreased endurance while engaged in physical activity.

8. At all times prior to July 27, 1997, J.Vitullo thoroughly enjoyed and actively participated in all types of athletic activities. J.Vitullo was an active participant in such activities as gymnastics, rollerblading, volleyball, water and snow skiing. She had no physical limitations

2

whatsoever. However, as a consequence of the boating accident injuries, J.Vitullo is no longer able to participate in athletic activities and is limited to her ability to participate in any type of meaningful physical fitness activity.

9. As a direct and proximate result of the above occurrence, J.Vitullo continues to suffer from the following emotional and psychological injuries:

   a. inability to sleep
   b. persistent nausea and recurring nightmares
   c. loss of appetite
   d. constant tension
   e. periods of depression

10. As a direct and proximate result of the above injuries, J.Vitullo incurred the following medical expenses from the following medical institutions:

***Orthopedic Associates of Chicago***
676 North St. Clair
Suite *450*
Chicago, Illinois 60611

| Date | Amount |
|---|---|
| 08/04/97 | $335.00 |
| 09/30/97 | $30.00 |
| 01/16/98 | $130.00 |
| 02/18/98 | $60.00 |
| | *$555.00* |

***UIC Department of Urology***

| Date | Amount |
|---|---|
| 12/08/97 | $ 215.00 |

***Northshore Imaging***
1535 Lake Cook Road
Northbrook, Illinois 60062-1447

| Date | Amount |
|---|---|
| 01/20/98 | $ 1,990.00 |

3

*Northwestern Memorial Hospital*
212 East Superior Street
Chicago, Illinois 60611                                          $1,735.50

07/27/97


*Northwestern Medical Faculty Foundation, Inc.*
P.O. Box 75494
Chicago, Illinois 60657-5494                                     $   154.00

07/27/97


**Tip Top Rehab, Ltd.**                                          $   111.00
                                                                 $   111.00
09/10/97                                                         $   111.00
09/12/97                                                         $   111.00
09/15/97                                                         $   111.00
09/17/97                                                         $   111.00
09/19/97                                                         $   111.00
09/22/97                                                         $   111.00
09/24/97                                                         $   111.00
09/26/97                                                         $   111.00
09/30/97                                                         $1,110.00
10/01/97

                                                                 $5,759.50

**Partial Total Medical**


J.Vitullo has had other medical care and treatment that is not contained in this document, however, she is still suffering from the physical and emotional aspects of this incident.


11.   In addition to the aforementioned medical bills, as a direct and proximate result of the above occurrence, J.Vitullo incurred the following financial expenses:

4

| | | |
|---|---|---|
| *Funeral Expenses* (A.Vitullo) | | $ 6,815.17 |
| Mont Clair Funeral | | $ 1,852.88 |
| Funeral Luncheon | | $ 4,700.00 |
| All Saints Mausoleum | | |
| | | $13,368.05 |

*American Diving & Salvage Co.* (wreckage removal)
P.O. Box 578250
Chicago, Illinois 60657-8250

07/28/97 $ 4,500.00

**TOTAL** **$17,568.05**

12. As a direct and proximate result of the above occurrence, J.Vitullo sustained the following property losses:

| | | | |
|---|---|---|---|
| | a. | Loss of 1997 26-foot Velocity powerboat | $69,580.00 |
| | b. | Loss of boating equipment | |
| | | Anchor Shade | $ 170.00 |
| | | Spotlight | $ 30.00 |
| | | Fenders (4) | $ 130.00 |
| | | Propellor Lock | $ 40.00 |
| | | Fire Extinguisher | $ 25.00 |
| | | Lifevests, anchor | $ 350.00 |
| | | | $ 745.00 |
| | c. | Loss of personal items | |
| | | RCA Hi-8 Camcorder | $ 1,142.66 |
| | | Minolta 400si 35mm Camera | $ 380.00 |
| | | Minolta 70-210 Zoom Lens | $ 180.00 |
| | | Clothing, blankets, etc | $ 500.00 |
| | | Pagenetpager | $ 50.00 |
| | | | $ 2,252.66 |

**TOTAL** **$ 72,527.66**

13. J.Vitullo and A.Vitullo met in the summer of 1992. They started dating in the fall of 1994. They dated continuously up until their engagement of December 14, 1995. On September 28, 1996, J.Vitullo and A.Vitullo were married. No children came from this marriage. Moreover,

neither J.Vitullo nor A.Vitullo never had any children nor adopted any children before his death.

14. At the time of his death, A.Vitullo earned an annual income of $47,598.00.

15. Prior to his death on July 27, 1997, J.Vitullo and A.Vitullo jointly operated a business commonly known as "Dimensions Through Motivation" (hereinafter referred to as "Dimensions). A. Vitullo was the owner of this business and undertook all major responsibilities regarding its operation.

16. In addition to working together, J.Vitullo and A.Vitullo cherished spending time with one another outside of the work environment. J.Vitullo and A.Vitullo were happily married and planned to start a family in the future. Moreover, J.Vitullo and A.Vitullo enjoyed a healthy sexual relationship.

17. As a direct and proximate result of the above occurrence, J.Vitullo lost the companionship and joy that was once provided by her husband, A.Vitullo. Her entire life has changed since July 27, 1997. In addition, A.Vitullo's expertise with regards to running their business and, as a result, Dimensions had lost a significant amount of revenue. In September of 1999, J.Vitullo closed the business and sold all of the assets.

## CONCLUSION AND AWARD OF JUDGMENT

As a result of her personal injuries that she suffered and due to the Default Judgment entered against both Defendants, J.Vitullo is awarded a total of $165,000.00 to compensate her for her physical and mental injuries relative to this incident.

In addition, as a result of her husband, A.Vitullo's death, J.Vitullo sustained a loss of consortium and companionship. J.Vitullo is awarded a total of $600,000.00 to compensate her

6

for her husband's death.

Finally, J.Vitullo is awarded the economic damages for the property loss of $72,527.66 and incidental expenses associated with A.Vitullo's death in the amount of $13,368.05.

Enter:

_____
David H. Coar
United States District Judge

Dated: JAN 2 5 2001

7